## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

PHILADELPHIA FINANCIAL MANAGEMENT
OF SAN FRANCISCO, LLC, and BLUE LION
MASTER FUND, L.P., Individually and On Behalf
of All Others Similarly Situated,

            Plaintiffs,

v.

DJSP ENTERPRISES, INC., DAVID J. STERN,
and KUMAR GURSAHANEY,

            Defendants.

Case No. 0:12-cv-61018

## DJSP ENTERPRISES, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant DJSP

Enterprises, Inc. respectfully moves to dismiss the First Amended Class Action Complaint

("Complaint"), D.E. 20, filed by Plaintiffs Philadelphia Financial Management of San Francisco,

LLC, and Blue Lion Master Fund, L.P., and in support thereof states:

### INTRODUCTION

The Complaint is identical in all material respects to Plaintiffs' original complaint which

this Court dismissed for failure to state a claim. *See Philadelphia Financial Management of San*

*Francisco, LLC, et al. v. DJSP Enterprises, Inc., et al.*, Case No. 10-61261-CIV-ZLOCH, Final

Order of Dismissal (September 30, 2011) ("Order"), Exhibit "A" hereto.  Rather than request

leave to amend the original complaint, Plaintiffs filed a nearly identical Class Action Complaint

under a new case number.  Plaintiffs then filed the instant First Amended Class Action

Complaint on August 27, 2012. D.E. 20. The Complaint should be dismissed because it contains the same deficiencies as the original complaint.[1]

The Complaint attempts to plead violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, promulgated under the Exchange Act, against DJSP. Compl. Count I ¶¶ 138-53. Additionally, the Complaint attempts to plead counts for Common Law Fraud, Compl. Count III, ¶¶ 157-59, and Negligent Misrepresentation, Compl. Count IV, ¶¶ 160-62. As with the original complaint, Plaintiffs' claims are all based on two categories of alleged statements or omissions regarding: (a) DJSP's financial condition or performance and (b) DJSP's and the law firm's business practices. Compl. ¶ 140; Order at 27, 31. The Complaint alleges that the Defendants intentionally disseminated false and misleading news releases and other communications to the investing public, and made SEC filings that overstated and misrepresented DJSP's operating and financial condition. Compl. ¶¶ 148-50. This Court has already held that Plaintiffs' factual allegations fail to state a claim for securities fraud. Order at 39. In its Order, the Court held that statements were not false, misleading or material, failed to adequately plead scienter, and many were forward-looking statements within the PSLRA's safe harbor provision. Order at 27-38.

The Complaint pleads exactly the same alleged misrepresentations or omissions contained in the original complaint which this Court found inadequate to support Plaintiffs' fraud claim. See Order at 39 (dismissing original complaint). The alleged statements include: (1) statements made in connection with DJSP's February 16, 2010 Registration Statement and

---

[1] The Complaint is an improper attempt to amend the original complaint dismissed by this Court in Case No. 10-61261-CIV-ZLOCH. In dismissing the original complaint, this Court denied Plaintiffs' bare request for leave to amend because Plaintiffs had not attached a proposed amended complaint or described the substance of the proposed amendments. See Order at 38. By filing a new, nearly identical Complaint in a separate action, Plaintiffs circumvented this Court's ability to assess in advance whether further amendments should be permitted. Indeed, had the Complaint been presented as a proposed amendment to the original complaint, this Court would have had the opportunity to deny leave to amend as futile because the amendments do not affect the result previously reached by this Court in its Final Order of Dismissal.

BERGER SINGERMAN
attorneys at law

Boca Raton   Fort Lauderdale   Miami   Tallahassee

1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453 Telephone 305-755-9500 Facsimile 305-714-4340

other related versions filed thereafter (Compl. ¶¶ 71-73); (2) statements made in connection with DJSP's March 26, 2010 Registration Statement and other related versions filed thereafter (Compl. ¶ 74); (3) February 17, 2010 DJSP Press Release containing 2010 Guidance (Compl. ¶ 82); (4) March 11, 2010 Announcement of Revenues for the Fourth Quarter, 2009 (Compl. ¶¶ 84-85); (5) March-May 2010 roadshows to promote the company (Compl. ¶¶ 87-88); (6) March 16, 2010 presentation by David Stern at the Roth OC Stock Conference (Compl. ¶¶ 89-91); (7) April 22, 2010 conference call with securities analysts (Compl. ¶ 102); and (8) The content of additional roadshows announced in May 2010 (Compl. ¶ 105).

Although Plaintiffs attempt to recharacterize the same statements as "misleading" due to the omission of further information rather than "false," the new allegations fail for the same reasons this Court dismissed the original complaint. Plaintiffs' claims for common law fraud and negligent misrepresentation similarly fail to satisfy the requisite pleading standard as they do not contain the specificity required by Federal Rule of Civil Procedure 9. Accordingly, the Court should once again dismiss the Complaint.

## ARGUMENT

The Complaint should be dismissed because it suffers from the same deficiencies as Plaintiffs' original complaint. To survive a motion to dismiss, "securities fraud claims, like other types of fraud claims, have always been subject to Fed. R. Civ. P. 9(b)'s heightened pleading requirements." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). The Complaint must "state with particularity the circumstances constituting fraud." *Id.* Specifically, the Complaint must set forth: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same,

BERGER SINGERMAN
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* Additionally, a securities fraud claim is subject to a heightened pleading standard with respect to the element of scienter. *Id.* The particularity rule for fraud claims "alerts defendants to their precise misconduct and protects defendants against baseless charges of fraudulent behavior." *Holguin v. Celebrity Cruises, Inc.*, 2010 WL 1837808, at *2 (S.D. Fla. May 4, 2010).

The Complaint fails to plead the elements of: (1) a securities fraud claim under Section 10(b) of the Exchange Act or Rule 10b-5; (2) common law fraud under Florida law; and (3) negligent misrepresentation under Florida law. Additionally, Plaintiffs do not plead fraud with the specificity required by Rule 9 and fail to meet the heightened pleading standard required to state a securities fraud claim. Because Plaintiffs' new Complaint fails to correct any of the deficiencies which this Court found fatal to the original complaint, the First Amended Class Action Complaint should be dismissed.

## I.   THE COMPLAINT FAILS TO ALLEGE A SECTION 10(B) CLAIM

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful to use deception or manipulation in connection with the purchase or sale of any registered security:

> **(b)**  To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b), (footnote omitted).  Regulation 10b-5 further provides that in doing so, it is unlawful to defraud, make false statements of material fact, to omit to state a material fact, or to engage in conduct that would operate as a fraud or deceit upon a person in connection with the purchase or sale of securities. See 17 CFR § 240.10b-5.

BERGER SINGERMAN
attorneys at law                *Boca Raton    Fort Lauderdale    Miami    Tallahassee*
1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

To state a securities fraud claim under Section 10(b) and Rule 10b-5, Plaintiff must allege six elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation." *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 789 (11th Cir. 2010) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236-37 (11th Cir. 2008) (citing same). The Complaint fails to allege a misstatement or omission of material fact, and fails to allege scienter sufficient to state a claim under the Exchange Act. Moreover, numerous alleged statements are forward-looking statements that are not actionable under the PSLRA's safe harbor provision.

This Court previously analyzed the alleged statements or omissions in the Complaint based on two categories: (1) those concerning Defendants' business practices, and (2) those concerning DJSP's financial performance. Order at 27, 31. The Court found that neither category of alleged statements supported Plaintiffs' claims. With respect to the first category, this Court found that:

> Plaintiffs have not adequately alleged that Defendants' statements about DJSP's operations were false or misleading. Viewed in context, Defendants' references to "efficiency" and "accuracy" mainly concern DJSP's use of technology to streamline foreclosure processing and, to a lesser extent, the company's hiring and training of employees to handle its large volume of work. . . . Second, and more important, Defendants' statements about the "rigor" of DJSP's processes, the "efficiency" and "accuracy" of its operations, and its "effective" staff training were not material. As a general matter, all of these traits would have been important to the success of DJSP's foreclosure-processing business. But as used in the statements identified by Plaintiffs, **these terms do not assert specific, verifiable facts that reasonable investors would rely on** in deciding whether to buy or sell DJSP's securities.

BERGER SINGERMAN
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453 Telephone 305-755-9500 Facsimile 305-714-4340

Order at 27-31. (emphasis added)  In sum, the Court concluded that Plaintiffs failed to allege that Defendants made false or misleading material statements about DJSP's operational practices. Order at 28, 31.  The Complaint adds no additional allegations asserting specific verifiable facts about DJSP's business practices that were not included in the original complaint and already found to be "immaterial" and "not the type of statement upon which a reasonable investor would rely." *See* Order at 29-30.

> With respect to the second category, the Court found:

> The other category of statements that Plaintiffs allege were false and misleading – those involving DJSP's business prospects and expected financial results – are forward-looking statements subject to the PSLRA's safe-harbor provision. . . . These statements included projections of DJSP's earnings, comments on management's plans and objectives for future operations, other observations about the company's future economic performance, and assumptions underlying these predicted events. . . .Further, most of the allegedly fraudulent statements concerning DJSP's financial outlook were identified as forward-looking statements and were "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement. . . ." The remaining statements alleged by Plaintiffs are oral statements that Stern and Gursahaney made during a conference call with analysts on April 22, 2010. . . . the statements are entitled to protection if they were immaterial or if Plaintiffs' complaint does not permit a strong inference that Defendants made the statements with actual knowledge that they were false or misleading . . . . With respect to Defendants' statements confirming DJSP's original guidance, the Court finds that Plaintiffs' allegations do not present a strong inference that Defendants made these statements knowing they were false. . . .Stern's other statements on the April 22 call – that he was not overly concerned by HAMP and that the company was well positioned to adjust to, and even profit from, that program's procedures – were immaterial. . . . Stern's remarks conveyed no specific representations about that subject, only a general statement of his relative lack of concern with one of the government programs and broadly optimistic claims that DJSP was "well positioned" with respect to that program. Reasonable investors would not attach significant weight to these vague comments.

Order at 31-38. In sum, the Court held the statements in this category were either forward-looking under the PSLRA's safe harbor provision, immaterial, or that the allegations did not

BERGER SINGERMAN
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

support a strong inference that Defendants knew the statements were false when made.  Order at 31-38.

### A.   The Complaint Fails To Allege a Material Misrepresentation or Omission

To allege a material misrepresentation or omission, a securities fraud claim must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief. . . . state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  "It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant."  *Basic, Inc. v. Levinson*, 485 U.S. 224, 238 (1988).  Plaintiff must therefore show that the alleged statement concerned a material fact.  *Id.*

A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."  *TSC Industries v. Northway, Inc.*, 426 U.S. 439, 449 (1976). This requires a showing of "substantial likelihood" that, under all the circumstances, the "fact would have assumed actual significance in the deliberations of the reasonable shareholder."  *Id.*  For an omitted fact, there must be a substantial likelihood that disclosure of the fact "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Id.*

The Complaint supplies not a single additional fact concerning a material misrepresentation or omission to bolster its claims in the original complaint.  In fact, the majority of the Complaint duplicates, word for word, the allegations in the original complaint.  *See* Stern Mot. Ex. B (D.E. 19-2).    Thus, the outcome should be no different with respect to this Complaint, which relies on the same statements or omissions as the original.

First, as in the original complaint, the instant Complaint alleges misrepresentations in connection with statements made on DJSP's February 16, 2010 registration statement and related

BERGER SINGERMAN
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

1450 Brickell Avenue. Suite 1900 Miami. Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

versions filed thereafter.  Compl. ¶¶ 71-73.  These are the same statements alleged in the original complaint, and include that: (a) DAL relied heavily on a proprietary case management software system to achieve a high level of efficiency, accuracy and customer service (b) through leading edge IT and hiring and training of staff for large scale operations, DJSP was well positioned to maintain a competitive advantage in an industry populated by smaller firms; (c) IT systems allow DJSP to interact efficiently with clients and to reduce processing time while minimizing human error and handling large number of new files; (d) IT solutions improve processing time and reduce human error (e) DJSP delivers effective staff training to ensure efficient and effective processing of all referrals; (f) clients demand process rigor, efficiency and accuracy with which the firms complete the foreclosure process; (g) DJSP has developed rigorous processes tailored to the needs of each of the law firm's clients as a result of having processed a significant percentage of their case volume over many years of service; (h) DJSP has invested in proprietary IT to achieve high efficiency and reduced human error; and (i) DJSP is uniquely positioned to capitalize on opportunities for further growth in current and future markets.  Id.

The Complaint also alleges, as in the original complaint, misrepresentations in connection with DJSP's March 26, 2010 registration statement and related versions, Compl. ¶74, namely, that LODJS made significant investments in IT, processes and staff to meet requirements for foreclosure actions throughout FL.  Id.

In connection with the February 16 and March 26 statements, Plaintiffs adds three paragraphs of discussion as to why they contend those statements are misleading.  *See* Compl. ¶¶ 79-81.  In essence, Plaintiffs simply argue that even if not false, the statements conveyed the false impression that DJSP and LODJS "employed efficient and accurate processes in pursuing foreclosures on behalf of LODJS' clients, when that impression could not be further

BERGER SINGERMAN
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

1450 Brickell Avenue. Suite 1900 Miami. Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

from the truth" (¶79), "employed 'process rigor, efficiency and accuracy' in their foreclosure processes" even though that was not the case (¶80) and achieved a "high level of efficiency, accuracy and customer service" through their case management software when its processes were in fact "slipshod." (¶81).

None of these new paragraphs contains any new facts, but simply argues that the exact same statements already considered by this Court are misleading based on Defendants' failure to divulge further detail about the quality of its operations. But the information Plaintiffs claim was omitted does not rest upon established facts, but only generalized opinions that the practices at DJSP or LODJS were "slipshod" and "shoddy." Such generalized omissions would not be actionable because there is no reasonable likelihood that such opinionated statements would have had actual significance even if disclosed to an investor. As this Court has already held, in its 39-page order analyzing the original complaint, vague assertions about the quality of Defendants' business practices do not rise to the level of a material misrepresentation or omissions under the securities laws. *See* Order at 39; *id.* at 28-30 (statements about "rigor" "efficiency" "accuracy" and staff training are not false or misleading and are not material).

The Complaint also includes the same misrepresentations or omissions previously alleged with respect to the February 17, 2010 DJSP press release containing its 2010 Guidance, in which DJSP allegedly stated that it expected to report an adjusted net income of approximately $49 million and adjusted EDITDA of approximately $80.6 million, excluding a one-time transaction expense associated with the Transaction. Compl. ¶ 82. These allegations were also held insufficient by this Court to support a claim for securities fraud. Order at 31-38 (statements projecting DJSP's earnings, comments on management's plans and objectives for the future, other observations about the company's future economic performance, and assumptions

BERGER SINGERMAN
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*
1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

underlying these predicted events are forward-looking statements subject to the PSLRA's safe-harbor provisions); *id.* at 35-38 (statements confirming DJSP's original guidance do not present a strong inference that Defendants made these statements knowing they were false).

The Complaint also includes the same misrepresentations or omissions alleged in the original complaint with regard to the March 11, 2010 announcement of revenues for the fourth quarter, 2009. Compl. ¶¶ 84-85. Specifically, it alleges that: (a) DJSP announced that quarterly revenues increased 33% from the first quarter of 2009 and year to date revenues increased 31%; (b) David Stern stated that: DJSP delivers unparalleled customer service by combining unique mortgage and foreclosure expertise with highly automated processing; its efficiency has enabled growth; as a public company, DJSP will be able to leverage its expertise, expand, diversify and accelerate growth; and that DJSP was excited about its REO business going forward because it would become an increasingly significant source of revenue and income growth; and (c) DJSP reaffirmed its guidance stated in ¶ 82. These allegations were likewise contained in the original complaint and held insufficient.

Similarly, with respect to the allegations in paragraphs 82-85, Plaintiffs add only that Defendants statements were misleading because they failed to disclose that DJSP's and LODJS's foreclosure processes were "slipshod" and "pervasively fraudulent". Compl. ¶ 86. This Court previously found, however that the statements projecting DJSP's earnings, comments on management's plans and objectives for the future, other observations about the company's future economic performance, and assumptions underlying these predicted events are forward-looking statements subject to the PSLRA's safe-harbor provisions. Order. at 35-38. Even when considered in light of Plaintiff's alleged omissions, such statements would not be actionable under the safe harbor provisions of the PSLRA.

BERGER SINGERMAN
attorneys at law
*Boca Raton   Fort Lauderdale   Miami   Tallahassee*
1450 Brickell Avenue. Suite 1900 Miami. Florida 33131-3453 Telephone 305-755-9500 Facsimile 305-714-4340

The Complaint additionally references statements made at a March 16, 2010 presentation by David Stern at the Roth OC Stock Conference. Compl. ¶¶ 89-91. The statements purportedly indicated that: (a) foreclosures have had sustained growth for over 25 years at an annual rate of approximately 12%; (b) foreclosure volumes were expected by DJSP to continue to grow to historical height; (c) no matter what Obama rolled out with respect to government programs, it would not stop the inflow of defaults anticipated in the next two or three years because REO needs to be liquidated and at the end of the day, the cycle will restart; (d) foreclosure volumes through 2012 were expected to increase dramatically and remain at high levels until 2017; (e) with respect to the federal homeowner relief program, David Stern said it was failing and that the company would profit from opportunities created by programs designed to help homeowners in foreclosure; (f) the company could profit regardless of Obama's policies (g) David Stern did not anticipate any bumps and believed the operating subsidiaries would really jump out, especially with what was being pushed through the systems; (h) David Stern's office alone had over 15,000 foreclosures that simply needed to be set for sale; (i) he explained the profit he makes when they are set for sale because they are under HAMP (Home Affordable Modification Program) review; (j) made slide presentation also filed with SEC on the same day where defendants touted company's "unparalleled customer service" and its "transition to paperless system to increase reliability, efficiency and margins." *Id.*

With respect to the allegations in ¶¶ 89-91, the Complaint adds the following paragraphs not contained in the original complaint:

> The statements that HAMP "*is* failing," that "[n]o matter what Obama rolls out, there *is* no stopping this inflow of continued defaults," and "no matter what the Obama administration brings our way, we *have* found the way to create a profit center on it" were all affirmative misrepresentations of present fact – i.e., affirmative misrepresentations that government intervention was not adversely impacting the Company. These statements were inaccurate

because, as later disclosed by the Company, foreclosure volumes were down in the first quarter, and were down principally or at least in large part, to government intervention. Alternatively, to the extent that these statements were not literally false, they were rendered misleading by the Company's failure to contemporaneously disclose that government programs had adversely impacted referral volumes in the quarter. The statements, without further disclosure, at a minimum, left the misleading impression that DJSP was actually profiting as a result of the government programs, or, at the very least, was not adversely affected by them.

Complaint ¶ 93;

The financial representations described in Paragraphs 82, 84-85 and 91 were based on the assumption of continued, and accelerated, growth in the pace of foreclosures, as had occurred between 2007 and 2010. In other words, for these figures to be even remotely plausible, foreclosure rates needed to continue to increase as they had increased from 2007 to 2010. The reality, however, is that foreclosure volumes had already slowed in the first quarter, and this continued into the second quarter.

Complaint ¶ 94;

The representations concerning DJSP's financial performance that Defendants chose to make, described in Paragraphs 82, 84-85 and 91, also gave rise to a duty to disclose additional information — specifically, the fact that foreclosure volumes had slowed in the first quarter of 2010.

Complaint ¶ 96. Again, these allegations contain no new statement or omission that was not in the original complaint. In ruling on these statements previously, this Court found that "a general statement about a public matter (the success of the HAMP program)" is not actionable, and the predictions as to as to the Company's financial performance despite the government intervention programs were protected forward-looking statements under the PSLRA. *See* Order at 32, n.13. The fact that Defendants did not simultaneously disclose that DJSP's foreclosure volumes had slowed during the first quarter of 2010 does not change the essential nature of these statements.

Next, the Complaint alleges statements in connection with an April 22, 2010 conference call with securities analysts. Compl. ¶ 102. It claims that: (a) "Defendant Gursahaney reaffirmed the Company's prior guidance for 2010 at $318 million in revenues, and EBITDA of

BERGER SINGERMAN
attorneys at law
*Boca Raton   Fort Lauderdale   Miami   Tallahassee*
1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453   Telephone 305-755-9500   Facsimile 305-714-4340

$80 million;" (b) Defendant Stern stated that he believed the Company's guidance was conservative and was based on an expected uptick in foreclosures, as well as the addition of a new client; (c) that Defendant Stern also stated he was not overly concerned by HAMP and that the Company was well positioned to address any procedures implemented by HAMP. *Id.* These allegations were all contained in the original complaint and rejected as insufficient by this Court. Order at 34-38 (statements made during April 22 conference call do not present a strong inference that Defendants made them knowing they were false or include statements upon which reasonable investors would not rely; remarks reflecting lack of concern with government programs conveyed no specific representations). The instant Complaint adds no new allegations relating to statements at the April 22, 2010 conference call.

The Complaint then alleges, as it did previously, that the "Company conducted additional roadshows," and that at these roadshows, "Defendants repeated the optimistic representations made at the Roth conference in March, and did not alter their prior guidance for the quarter nor for the year." Compl. ¶ 105. These allegations were also contained in the original complaint and dismissed as insufficient. Order at 31-38 (statements confirming original guidance do not present a strong inference of knowledge; statements projecting earnings and commenting on plans for the future or economic performance are forward-looking statements which fall under the safe-harbor provision; broadly optimistic claims that DJSP was well positioned were only general statements and did not make specific representations). With respect to the allegations in ¶¶ 102, 105, the Complaint now adds that:

> There was no basis for the Company's repetition, in April and May 2010, described in Paragraphs 98-99, of the optimistic representations earlier made in March 2010. The first quarter, in which foreclosure volumes had were reduced due to government programs had already been concluded. Additionally, the second quarter, in which foreclosure volumes would continue to be reduced was well underway (and was half completed by mid-

BERGER SINGERMAN
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453 Telephone 305-755-9500 Facsimile 305-714-4340

> May 2010). Defendants knew, or at least recklessly disregarded, that their representations concerning the financial performance of the Company were inaccurate in light of the reduction in foreclosure volumes that had already occurred.

Compl. ¶ 106; and

> The representations concerning DJSP's financial performance that Defendants chose to make, described in Paragraphs 98-99, also gave rise to a duty to disclose additional information – specifically, the fact that foreclosure volumes had slowed in the first and second quarters of 2010.

Compl. ¶ 107. This Court, however, already considered the fact that Defendants did not factor into its projections the decline in referral volumes during the first quarter and found that Plaintiffs' allegations did not present a strong inference that Defendants made these statements knowing that they were false. *See* Order at 35.

Accordingly, for the foregoing reasons, the securities fraud claim should be dismissed for failure to state a claim under Section 10(b).

**B.    The Complaint Fails To Allege Scienter**

To state a securities fraud claim, Plaintiffs must also plead scienter according to the PSLRA's elevated standard. *Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784, 1796 (2010) ("Congress has enacted heightened pleading requirements for the scienter element of § 10(b) fraud cases.") (citing 15 U.S.C. § 78u-4(b)(2) (requiring plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind")); *Mizzaro*, 544 F.3d at 1238 ("the PSLRA raised the standard for pleading scienter"). A plaintiff cannot recover without proving that a defendant made a material misstatement *with an intent to deceive.*" *Merck*, 130 S.Ct. at 1796 (citations omitted). The Complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," and it must do so "for each defendant with respect to each violation." 15 U.S.C. §

BERGER SINGERMAN
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*
1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453 Telephone 305-755-9500 Facsimile 305-714-4340

78u-4(b)(2); *Mizzaro*, 544 F.3d at 1238 (quoting *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1016 (11th Cir. 2004)).   A plaintiff alleging fraud under § 10(b) "must plead facts rendering an inference of scienter *at least as likely* as any plausible opposing inference. . . . she must demonstrate that it is *more likely* than not that the defendant acted with scienter." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 328-29 (2007).   In sum, "to survive a motion to dismiss," Plaintiffs must, in addition to pleading all of the other elements of a securities fraud claim, "plead 'with particularity facts giving rise to a strong inference' that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements." *Id.*   The Complaint fails to meet this high standard.

This Court held that the original complaint failed to adequately allege scienter. *See* Order at 35 ("Specifically, with respect to the alleged "statements confirming DJSP's original guidance. . . . Plaintiffs' allegations do not present a strong inference that Defendants made these statements knowing they were false."). The Court explained that, even accepting Plaintiffs' allegations that Defendants knew, by the April 22 call, that foreclosures had slowed the first quarter due to government intervention programs, the allegations also "show that Defendants would ***not*** have known by then the full effect of the more significant system-conversion issue." Order at 35-36. "Given that Defendants first learned of the conversion issue no more than three weeks before the April 22 conference call and that they remained uncertain about the ongoing effect of this problem even as of late May, the Court cannot conclude that it is 'at least as likely as' not that Defendants actually knew on April 22 that DJSP could not meet or exceed its stated earnings guidance for the year." Order at 36. For this same reason, the Court found there was no strong inference of actual fraud based on allegations "that Defendants waited until late May to

BERGER SINGERMAN
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

revise DJSP's full-year guidance primarily as a result of the system-conversion issue." Order at 36 n.17.

Furthermore, this Court rejected Plaintiffs' attempt to meet the scienter requirement by alleging a motive to commit fraud. Order at 36. Specifically, the Court held that alleging Stern's "financial incentive to present DJSP's prospects in a positive light . . . . does not establish a strong inference of actual fraud, given that as of the April 22 call, Stern had limited knowledge about the effect of the client system-conversion – the main reason for the slowdown in DJSP's core business." Order at 36-37 (citing *Tellabs*, 551 U.S. at 325 (although "personal financial gain may weigh heavily in favor of a scienter inference," the "significance that can be ascribed to an allegation of motive. . . . depends on the entirety of the complaint")).

Nor do Plaintiffs' allegations establish scienter by showing "strong circumstantial evidence of conscious misbehavior or recklessness." *See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,* 553 F. 3d 187, 196 (2d Cir. 2009). Recklessness in this context means conduct that is "highly unreasonable and represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009). Such recklessness in this context means "conscious recklessness – i.e. a state of mind approximating actual intent, and not merely a heightened form of negligence." *Id.*

Nothing in the instant Complaint alters this Court's previous analysis. The Complaint relies on the same allegations of scienter as the original, adding only that:

> At all pertinent times, LODJS and DJSP were controlled by the same management, and both were dominated by Defendant Stern. Defendant Stern, and other officers of DJSP, were well aware of the manner in which LODJS conducted its law practice, as well as the adverse impact it would have on the

BERGER SINGERMAN
attorneys at law
*Boca Raton   Fort Lauderdale   Miami   Tallahassee*
1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

revenues of both LODJS and DJSP should LODJS' clients, and the public, become aware of the shoddy foreclosure practices, and entire lack of controls, at LODJS and DJSP.

Compl. ¶ 57; the allegations in ¶ 106, quoted above and:

The Company had delayed the release of its first quarter financial results as long as possible because Defendants knew that the results would disappoint the market, and make it impossible to redeem the Public Warrants. As of May 27, 2010, the first quarter had already been concluded for 57 days, and, in fact, the second quarter was 62% complete, and the Company still had not announced its results for the first quarter of 2010.

Complaint ¶ 112. These allegations simply repeat Plaintiffs' claims that Defendants knew, or recklessly disregarded, that their representations concerning the financial performance of the Company were inaccurate in light of the recent reduction in foreclosure volumes. As this Court previously observed, even if Stern had known that the government intervention program had adversely affected the volume of mortgage foreclosure referrals in the first quarter, Stern had limited knowledge of the main reason for the slowdown in business -- the client system conversion. See Order at 36-37. Accordingly, Plaintiffs still fail to make specific allegations that would support a strong inference of severe recklessness or intent to defraud. Therefore, the Complaint fails to adequately plead scienter.

C.    **The Complaint Alleges Statements That Are Not Actionable Under The PSLRA's Safe Harbor Provision**

Aside from failing to meet the normal pleading requirements under the Exchange Act, many of the allegations remain non-actionable, forward-looking statements. Under the PSLRA's safe harbor provision, forward-looking statements cannot give rise to liability under the Act. 15 U.S.C. § 78u-5(c). A defendant is not liable for a forward-looking statement that is false or misleading if it is (1) "identified as forward-looking" and (2) "accompanied by meaningful

BERGER SINGERMAN
attorneys at law          Boca Raton    Fort Lauderdale    Miami    Tallahassee

1450 Brickell Avenue. Suite 1900 Miami. Florida 33131-3453 Telephone 305-755-9500 Facsimile 305-714-4340

cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-(c)(1)(A)(i).

This Court held that the statements regarding Plaintiffs' financial performance which Plaintiffs allege are false and misleading are forward-looking statements subject to the PSLRA's safe harbor provision. Order at 31-35 (statements involving DJSP's business prospects, expected financial results, earnings projections, management plans, objectives for future operations, company's future economic performance and assumptions underlying these events are all forward-looking statements). The Complaint includes no additional statement that would alter this Court's analysis of the forward-looking statements in the original Complaint. This Court has already rejected the argument that some of Defendants' statements were not forward-looking because they included representations of existing facts concerning the effects of government intervention programs on DJSP's business. Order at 31-32 n.13 (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999) (company's claim that it was "well positioned" was a forward-looking statement whose truth can only be ascertained after seeing how the company's future plays out)). Accordingly, the safe harbor provision applies equally to the nearly identical statements alleged in the instant Complaint.

## II. THE STATE LAW CLAIMS FAIL FOR THE SAME REASONS THIS COURT ALREADY DISMISSED THE SECURITIES FRAUD CLAIM

### A. The Complaint Fails To State a Claim For Common Law Fraud

The Complaint fails to plead common law fraud for the same reasons it does not adequately support a securities fraud claim. Stating a cause of action under Florida law for common law fraud "is virtually identical to stating a claim under Rule 10b-5," except that the scienter requirement is more stringent for a securities fraud claim. *In re Sahlen & Associates, Inc. Securities Litigation*, 773 F. Supp. 342, 371 (S.D. Fla. 1991) (citations omitted) (securities

BERGER SINGERMAN
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453 Telephone 305-755-9500 Facsimile 305-714-4340

fraud claim requires showing of reckless disregard whereas as common law fraud requires only negligence to show scienter).   To state a cause of action for common law fraud, Plaintiffs must allege: "(a) a misrepresentation of a material fact; (b) that the representor of the misrepresentation knew or should have known of the statement's falsity; (c) that the representor intended that the representation would induce another to rely and act on it; and (d) that the plaintiff suffered injury in justifiable reliance on the representation." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 497 (Fla. 4th DCA 2001) (citation omitted); *see also Steyr Daimler Puch of America v. A & A Bicycle Mart, Inc.*, 453 So.2d 1149, 1150 (Fla. 4th DCA 1984).

Here, the Complaint does not support a claim for common law fraud.  Notably, Plaintiffs are required to allege, among other things, a misrepresentation of material fact.  For its common law fraud claim, however, Plaintiffs rely on the exact same allegations of misrepresentations or omissions rejected by this Court as insufficient.  Moreover, Plaintiffs fail to support the requisite knowledge and intent elements with anything other than the conclusory allegations discussed above with respect to the securities fraud claim.  The claim also fails to meet the pleading requirements of Fed. R. Civ. P. 9(b) because it does not specifically attribute the alleged "tortious conduct" to particular defendants or elaborate on what conduct specifically supports this claim.  Accordingly, Plaintiffs' claim for common law fraud should be dismissed.

**B.     The Complaint Fails To State a Claim For Negligent Misrepresentation**

Likewise, Plaintiffs' claim of negligent misrepresentation fails for the same reasons. Under Florida law, a negligent misrepresentation claim requires Plaintiff to establish four elements:

> (1) there was a misrepresentation of material fact; (2) the representor either knew of the misrepresentation, made the misrepresentation without knowledge of its

BERGER SINGERMAN
attorneys at law                          *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

truth or falsity, or should have known the representation was false; (3) the representor intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

*Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 607 F.3d 742, 747 (11th Cir. 2010) (citations omitted). "If a plaintiff claims to be misled, but cannot demonstrate a causal connection between the defendant's conduct and the plaintiff's misapprehension, the plaintiff cannot recover." *In re Lichtman*, 388 B.R. at 409-10 (citations omitted). Reliance upon the false representation must be justified. *Id.* at 410 (citations omitted).

As with Plaintiffs' other fraud claims, these allegations cannot support a claim for negligent misrepresentation because they fail to adequately allege a misrepresentation of material fact, knowledge, or intent with the required specificity under Rule 9. Accordingly, Plaintiffs' claim for negligent representation also requires dismissal.

Alternatively, this Court may decline to exercise jurisdiction over the state law claims if it determines that the federal claims are without merit. "District courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367 (c); *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 F. App.'x 334, 337 (2d Cir. 2011)([W]here all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise jurisdiction over pendent state-law claims"). Accordingly, should this Court determine that the federal claims should be dismissed, it may decline to exercise jurisdiction over the state law claims.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice for failure to state a cause of action.

BERGER SINGERMAN
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

1450 Brickell Avenue. Suite 1900 Miami. Florida 33131-3453 Telephone 305-755-9500 Facsimile 305-714-4340

Respectfully submitted,

BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone:    (305) 755-9500
Facsimile:    (305) 714-4340


By:___/s/_____
        Sharon Kegerreis, Esq.
        Bar No. 852732


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF on **September 10, 2012** on all counsel or parties of record on the Service List below who are registered in the CM/ECF system.


        ___/s/_____
        Sharon Kegerreis

4542846-2

BERGER SINGERMAN
attorneys at law
Boca Raton   Fort Lauderdale   Miami   Tallahassee
1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340

## SERVICE LIST

**David Marek**
Liddle & Robinson, LLP
800 Third Avenue
New York, NY 10022
212-687-8500
FAX: (212) 687-1505
dmarek@liddlerobinson.com

**Jonathan W. Cuneo**
Cuneo Gilbert & Laduca LLP
507 C Street NE Washington, DC
20002
202-789-3960 Fax: 789-
1813
Email: jonc@cuneolaw.com
*PRO HAC VICE*

**Lester Rene Hooker**
Saxena White, P.A.
2424 N. Federal Highway, Suite 257 Boca
Raton, FL 33431
561-394-3399
Fax. 561-394-33 82
Email: lhooker@saxenawhite.com

**Nathan C. Zipperian**
Shepherd Finkelman Miller & Shah LLC 1640
Town Center Circle
Suite 216
Weston, FL 33326
954 515 0123
Fax: 954 515 0124
Email: nzipperian@sfimslaw.com

**Jeffrey Harris**
Statman Harris & Eyrich, LLC 3700 Carew
Tower
441 Vine Street
Cincinnati, OH 45202
513-621-2666
Email: jharris@statmanharris.com

**Joseph E. White, III**
Saxena White, P.A.
2424 N. Federal Highway
Suite 257
Boca Raton, FL 33431
561-394-3399 Fax: 394-
3382
Email: jwhite@saxenawhite.com

**Matthew E. Miller**
Cuneo Gilbert & LaDuca, LLP 507 C
Street, N.E.
Washington, DC 20002
202-789-3960
Fax: (202) 789-1813
Email: mmiller@cuneolaw.com

**Richard Stuart Wayne**
Strauss & Troy
Federal Reserve Building 4th Floor 150 E
Fourth Street
Cincinnati, OH 45202-4018
513-621-2120
Fax: 629-9426
Email: rswayne@strausstroy.com

4542846-2

BERGER SINGERMAN
attorneys at law
*Boca Raton   Fort Lauderdale   Miami   Tallahassee*
1450 Brickell Avenue, Suite 1900 Miami, Florida 33131-3453  Telephone 305-755-9500  Facsimile 305-714-4340